Plaintiff-appellant Diana K. Flax appeals from a final decree of divorce, assigning errors pertaining to child support, spousal support, valuation of marital property, attorney fees, and the enforcement of temporary support orders.
Upon review of the record, we conclude that the trial court did not abuse its discretion in determining the value of the parties' marital property. Furthermore, the trial court did not abuse its discretion by utilizing defendant-appellee Jerry Flax's current salary in determining the correct amount of child support, or by making an award of spousal support in gross. The trial court's award of $750 in attorney fees was supported by the record. However, we do conclude that the trial court abused its discretion by failing to enforce or otherwise address claimed arrearages in temporary support.
Accordingly, the judgment of the trial court is Affirmed in part and Reversed in part. This cause is Remanded for further proceedings in accordance with this opinion.
 I
Mr. and Mrs. Flax were married in 1977. Ms. Flax brought this action for divorce. In her complaint, she not only named Mr. Flax as a defendant, but also named the two businesses in which he had an interest; Marion Niedhamer Produce, Inc. and F S Realty. At the time of the divorce, Ms. Flax was 41, Mr. Flax was 45, and they had two minor children.
During the early years of the marriage, Mr. Flax had purchased an interest in Marion Niedhamer Produce, Inc. He served as president of the corporation. He and his partner eventually became 50-50 shareholders in the corporation. At some point, Mr. Flax became a partner in F S Realty, a company whose only asset appears to be the warehouse out of which the produce company operates. The produce company paid rent to the realty company for the lease of the building.
In October or November of 1994, Mr. Flax began to negotiate for the sale of his interest in the two businesses. However, upon filing her complaint for divorce, Ms. Flax sought a restraining order to prevent Mr. Flax from selling any marital property. The trial court granted the motion, and the sale was delayed. In June, 1995, Marion Niedhamer Produce, Inc. and F S Realty filed a motion to vacate the restraining order as it pertained to the sale of Mr. Flax's interest in those businesses. The trial court granted the motion, and the sale was consummated in August, 1995. Mr. Flax sold his interest in the produce company for $230,000, and his interest in the realty company for one dollar. The proceeds from the sale were held in an escrow account by Ms. Flax's attorney. After the sale of his interest, Mr. Flax no longer served as president of the corporation, but began working as a warehouse manager. His salary decreased from an excess of $75,000 to approximately $38,000.
During the pendency of the divorce action, a temporary support order was entered; it was amended in January, 1996. The amended order required Mr. Flax to pay 55% of the household expenses; specifically, mortgage payments, taxes and insurance, utilities and basic telephone. He was also ordered to pay one-half of the necessary expenses for the care of the minor children.
The final divorce hearing was held on April 8, June 12, June 19 and July 10, 1996. A magistrate to whom the case had been referred filed a decision and order on August 12, 1996. Ms. Flax was awarded the marital residence and all of the equity therein as spousal support in gross. The proceeds from the sale of the business interests, after payment of taxes, were equally divided between the parties. Ms. Flax was also awarded $750 in attorney fees. The magistrate found that Mr. Flax had allowed his temporary support payments for child expenses to accrue, and found an arrearage of $368.70 for the months of January through March, 1996; Mr. Flax was ordered to pay the arrearage. Both parties filed objections to the magistrate's decision. An order to withhold the sum of $608 per month in child support from Mr. Flax's wages was issued on August 19, 1996.
On August 26, 1996, Ms. Flax filed a motion for a hearing on the issue of the temporary support arrearage. A hearing was held before the magistrate on December 27, 1996. On January 13, 1997, the magistrate entered a Decision and Order finding Mr. Flax in arrears on the January 26, 1996, temporary support order in the amount of $2,653.26. The magistrate found that a portion of the arrearage was for necessary expenses for the children that had accrued from July, 1996 through December, 1996. The remainder of the arrearage was for household expenses; however, the Decision does not make clear the dates for which the household arrearage had accrued. Mr. Flax filed objections to this ruling on January 16, 1997.
On February 11, 1997, the trial court issued a Judgment Entry adopting the decision and order of August 12, 1996, and overruling the objections thereto. The Judgment Entry did not address the issue of the temporary support arrearage. Ms. Flax filed this appeal from the February 11, 1997 judgment entry.
Thereafter, on May 8, 1997, the trial court held a hearing regarding the issue of the magistrate's decision and order on the arrearage. On May 29, 1997, the trial court entered a Judgment Entry in which it held that the orders for temporary support had become merged with the final judgment and decree of divorce and were no longer separately enforceable. Ms. Flax filed an appeal from that judgment. See Flax v. Flax (Feb. 13, 1998), Greene App. No. CA 97-0063, unreported.
 II
Ms. Flax's First and Second Assignments of Error state:
 THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO TAKE ADEQUATE CONSIDERATION OF THE RELATIVE EARNING CAPACITY OF THE APPELLEE IN ITS DETERMINATION OF THE LEVEL OF SPOUSAL SUPPORT APPROPRIATE.
 THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO RETAIN CONTINUING JURISDICTION OVER THE ISSUE OF SPOUSAL SUPPORT.
Ms. Flax contends that the trial court erred because it "inappropriately considered only [Mr. Flax's] present income while determining the amount of spousal support to be awarded to [her]". She also contends that the trial court erred by failing to retain jurisdiction to modify the award of spousal support.
In her first Assignment of Error, Ms. Flax essentially argues that the trial court should have imputed income to Mr. Flax, and should have considered his relative earning ability as president of a corporation rather than his income as a warehouse manager.
In Paul v. Paul (Feb. 9, 1994), Greene App. No. 93-CA-47, unreported, we held that awards of spousal support rest within the sound discretion of the trial court:
 The trial court enjoys wide latitude in determining the appropriateness as well as the amount of spousal support. The court's discretion is limited and guided by R.C. 3105.18(C), which mandates that the court consider all of the relevant factors in that statute when making awards of spousal support. The court must evaluate the evidence germane to each applicable statutory factor, then weigh the need for support against the ability to pay. The decision of the trial court will not be reversed absent an abuse of discretion. In making an award of spousal support, a trial court is required to set forth the basis for its award in sufficient detail to enable a reviewing court to determine if the award is fair, equitable, and in accordance with law.
Id., citations omitted.
We agree with Ms. Flax that R.C. 3105.18(C) requires the trial court to consider the relative earning abilities of the parties. We also agree that "[w]hen considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a `person could have earned if he made the effort'". Petrusch v. Petrusch (March 7, 1997), Montgomery App. No. 15960, unreported, quoting Miller v. Miller
(Dec. 28, 1994), Montgomery App. No. 14540, unreported. Thus, we have found that a trial court may impute income when making a determination to award spousal support. Id. However, "R.C.3105.18(C) itself does not compel a trial court to impute income. Rather, it simply requires a trial court to consider the parties' relative earning abilities, along with many other factors, when contemplating a spousal support award." Id.
It is clear from the final decree that Mr. Flax's relative earning ability was considered, as required. See R.C.3105.18(C)(1)(b). However, based upon the testimony at trial, the trial court found that Mr. Flax was appropriately employed to full capacity, and that he had merely "exchanged his salary for the return of his capital investment in the corporation." Our review of the record convinces us that this finding is supported by the evidence, and does not constitute an abuse of discretion.
Moreover, the record establishes that all the statutory factors relevant to this case were in fact considered by the trial court in arriving at its decision to award spousal support. Specifically, the trial court found Ms. Flax had an income of $32,000, while Mr. Flax had an annual salary of approximately $38,000. R.C. 3105.18(C)(1)(a). The trial court further considered the age and health of the parties. R.C.3105.18(C)(1)(c). The trial court also considered the duration of the marriage, and noted that the parties had established a standard of living that they would not be able to maintain once divorced. R.C. 3105.18(C)(1)(e) and (g). The court noted that Ms. Flax had earned a bachelor's degree in education, and that Mr. Flax had a high school education with one year of college. R.C.3105.18(C)(1)(h). The trial court also noted that Ms. Flax had earned retirement with the State Teachers Retirement System, and that Mr. Flax had no retirement benefits. R.C. 3105.18(C)(1)(d). Finally, the trial court noted that for the first ten years of the marriage, Ms. Flax stayed at home raising the parties' children, and thus, had "forfeited years of income production due to her marital responsibilities." R.C. 3105.18(C)(1)(m).
The trial court found that an award of spousal support to Ms. Flax was appropriate and reasonable based upon the parties' standard of living and the years during which Ms. Flax had forfeited income while she remained at home with the parties' children. Thus, the trial court granted Ms. Flax a spousal support award in gross consisting of "all right, title and interest and equity in and to the marital real estate," which had a stipulated value of $190,000. The record establishes a net equity in the residence of $32,228.
Because the trial court's findings support the amount of spousal support awarded, we conclude that the trial court did not abuse its discretion.
We must next consider the issue of the trial court's failure to provide for continuing jurisdiction to modify the support order. We note that Ms. Flax's argument that the trial court erred by failing to retain continuing jurisdiction is premised upon the possibility that Mr. Flax might "immediately regain the higher levels of income." Ms. Flax implies that Mr. Flax took a cut in salary in an attempt to circumvent any duty to pay spousal support. In fact, she refers to the pay cut as "suspect." She cites Colwell v. Colwell (Oct. 11, 1988), Butler App. No. 88-03-043, unreported, for the proposition that the denial of continuing jurisdiction over the issue of sustenance alimony is improper.
We find no merit in this argument. First, the argument ignores the fact that the trial court found that the sale of Mr. Flax's interest in the corporation was made in good faith, and that the sale actually benefitted Ms. Flax, because she was awarded one-half of the proceeds after payment of taxes. Second, having concluded that the trial court did in fact award Ms. Flax reasonable and appropriate support in gross, instead of awarding her a continuing order for periodic payments of money, we find it reasonable that the trial court would not retain jurisdiction. Furthermore, Colwell, supra, is inapposite, because it is limited to modification of continuing orders for periodic payments of spousal support (formerly referred to as sustenance alimony).Id., at 2. Accordingly, we cannot say that the trial court abused its discretion
Ms. Flax's First and Second Assignments or Error are overruled.
 III
Ms. Flax's Third Assignment of Error is as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO IMPUTE INCOME TO APPELLEE REQUIRED BECAUSE OF UNDEREMPLOYMENT IN THE DETERMINATION OF CHILD SUPPORT.
Ms. Flax contends that the trial court erred because it calculated child support payments based upon Mr. Flax's salary as a warehouse manager, rather than upon his income as corporation president.
For the purposes of determining child support, R.C.3113.215(A)(1) defines "income" as:
 (a) For a parent who is employed to full capacity, the gross income of the parent;
 (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent.
The trial court found that Mr. Flax was not voluntarily underemployed within the meaning of R.C. 3113.215(A). The court further found that Mr. Flax's salary was "commensurate with his job responsibilities, and the prevailing job opportunities and salary levels for produce warehouse work in the community." The court also found that "[t]he fact that he earned substantially more while president of Marion Niedhamer Produce, Inc. is no longer relevant, as he has exchanged his salary for the return of his capital investment in the corporation." The trial court finally found that given Mr. Flax's education and work experience, he was employed to full capacity. Therefore, the trial court declined to impute a higher income in determining the amount of Mr. Flax's child support obligation.
"Whether a parent is `voluntarily underemployed' within the meaning of R.C. 3113.215(A)(5) and the amount of `potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion." Rock v.Cabral (1993), 67 Ohio St.3d 108, paragraph one of the syllabus. After reviewing the record, which supports the trial court's findings, we cannot say that the trial court abused its discretion.
Accordingly, this Assignment of Error is overruled.
 IV
Ms. Flax's Fourth Assignment of Error is as follows:
 THE TRIAL COURT'S CONCLUSION AS TO THE VALUE OF APPELLEE'S INTEREST IN MARION NIEDHAMER PRODUCE, INC. IS INCONSISTENT WITH THE WEIGHT OF THE EVIDENCE PRESENTED AT THE HEARING.
Ms. Flax contends that the trial court erred in its valuation of Mr. Flax's interest in Marion Niedhamer Produce, Inc. In support, she cites two issues. First, Ms. Flax claims that the trial court erred because it relied upon the testimony of Mr. Flax's accountant, and failed to "appropriately" consider the testimony given by her accountant. Second, she argues that the trial court erred by finding that Mr. Flax's interest was sold for its fair market value because Mr. Flax failed to establish that the sale was an arm's length transaction.
Ms. Flax's argument that the trial court should have paid more heed to her expert is premised upon her claims that: (1) her accountant's opinion was more "informed" because he had conducted more business appraisals than had Mr. Flax's accountant; and (2) the value given by her expert was more accurate because he considered the goodwill value of the company while Mr. Flax's expert did not.
We reject Ms. Flax's claim that the number of appraisals conducted by her accountant enhanced his credibility. At trial, both accountants were qualified and accepted as experts. Ms. Flax did not raise an objection concerning the expert status of Mr. Flax's accountant at trial or on appeal. Thus, her argument essentially urges that we reverse the trial court on a credibility issue. We decline, and instead, will defer to the trial court, which was in the best position to weigh the credibility of the witnesses. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80.
We next turn to the issue of the valuation of the corporation's goodwill. Ms. Flax claims that her expert's valuation was correct because it included the goodwill of the corporation. She argues that "[t]he vast difference seen between the values given by both expert witnesses is largely due to [Mr. Flax's expert's] failure to account for the corporation's goodwill, a crucial factor in valuing the company."
We note that Ms. Flax incorrectly refers to items that Mr. Flax received as an owner of the corporation as constituting the goodwill of the corporation; e.g., concert tickets, Cincinnati Reds tickets, gas expense reimbursement and meal reimbursement. The items to which Ms. Flax refers would be more appropriately considered as fringe benefits or "perks," which have no bearing on the goodwill value of the corporation.
Furthermore, Ms. Flax's expert testified that he did not specifically ascribe any value to the corporation's goodwill because it had neither a "positive nor negative impact" on the valuation. Mr. Flax's expert also testified that goodwill was not a factor affecting the valuation of the business. Given that both experts considered the goodwill of the corporation, and both found that it did not have an impact on the valuation of the business, we cannot conclude that the testimony by Ms. Flax's expert was entitled to more weight.
Finally, we address Ms. Flax's claim that the evidence did not support a finding that the sale was an arm's length transaction. As previously noted, Ms. Flax argues that the sale was made after the divorce proceedings had begun, and was merely an attempt by Mr. Flax to avoid his support obligations. She further notes that the sale price was determined by Mr. Flax and his partner without the aid of an accountant, attorney or appraiser. Thus, she claims that the sale was not made in good faith, was not the result of an arm's length transaction, and thus the sale price did not represent the fair market value of his interest.
Mr. Flax testified that he sold his interest because he felt he was no longer physically capable of working the long hours that he was required to as a partner, and because he and his partner were having disagreements regarding the future growth of the company.
Our review of the record indicates that negotiations for the sale of Mr. Flax's share of the corporation were begun in October or November of 1994, well before Ms. Flax filed her complaint for divorce in May, 1995. The evidence further indicates that the sale was scheduled to be completed two days after the filing of the divorce, but was delayed because Ms. Flax asked for a motion restraining the sale of marital property. The sale was not completed until August, 1995, when the trial court vacated the restraining order.
Furthermore, the trial court found that Mr. Flax and his partner had been involved in the business since 1978, and would be considered experts in understanding the produce business. Thus, Mr. Flax and his partner could reasonably be deemed capable of determining and negotiating a fair price for the business. The evidence shows that at the time of the sale, the purchase price constituted eighty to ninety percent of the entire equity of the company. Moreover, regardless of the fact that the owners did not retain the services of an accountant or an appraiser in setting the sale price, the fact that the price fell within the range of values cited by Mr. Flax's accountant supports the trial court's finding that the transaction was reasonable.[1]
The record does not support Ms. Flax's claim that the sale was not made in good faith, that it was not an arm's length negotiation, or that Mr. Flax sold his interest at an unreasonably low price. Even Ms. Flax's accountant testified that the transaction was in fact made at arm's length, and that there was nothing about the transaction to indicate that it was improper. Thus, we conclude that the trial court did not err in ruling that the transaction was an arm's length transaction.
Given that the record reasonably supports the trial court's valuation of Mr. Flax's interest in the corporation, we cannot say that it abused its discretion. Accordingly, this Assignment of Error is overruled.
 V
Ms. Flax assigns the following as her Fifth Assignment of Error:
 THE TRIAL COURT'S CONCLUSION AS TO THE VALUE OF APPELLEE'S INTEREST IN FS REALTY IS INCONSISTENT WITH THE WEIGHT OF THE EVIDENCE PRESENTED AT THE HEARING.
Ms. Flax contends that the trial court erred in valuing Mr. Flax's interest in F S Realty. The only asset owned by the company is a warehouse building located in Dayton, which was built for the sole purpose of providing an operating facility for Marion Niedhamer Produce, Inc. Ms. Flax again complains that the trial court failed to appropriately consider the testimony of her expert, a real estate appraiser, who appraised the warehouse property at $480,000. She argues that the court erred by accepting the value of $342,000 set by Mr. Flax's appraiser, and by failing to state its reasoning for using this appraisal in valuing the company. Ms. Flax does not cite any error in the appraisal by Mr. Flax's appraiser. The only apparent basis for her argument is the fact that the building had a sizeable mortgage indebtedness, which exceeded the value placed on it by Mr. Flax's appraiser, but did not exceed the value given by her appraiser.[2] We reject this argument.
The trial court, contrary to Ms. Flax's assertions, did set forth its findings on this issue:
 It is the DECISION and opinion of the Magistrate that the value established by [Mr. Flax's appraiser], a certified appraiser having substantial experience in the appraisal of commercial real estate, is more probative, as he is a more knowledgeable and experienced commercial real estate appraiser. His testimony recognized the uniqueness of the building located at 904 Woodley Road, Dayton, Ohio 45403 as primarily utilized for an active produce operation. Due to this unique use, and the uniqueness of the design of the building, the building has a limited appeal to potential purchasers. Further, [Mr. Flax's appraiser] correctly recognized that the design and fixtures and other equipment on the property make it primarily marketable only to another active commercial produce operation. [Mr. Flax's appraiser] offered substantial testimony regarding the value of comparable commercial real estate in the Dayton, Ohio area.
The record supports the trial court's findings. Judgments supported by some credible evidence will not be reversed as being against the manifest weight of the evidence. Seasons Coal Co.,supra. Mere dissatisfaction with a ruling is not a basis for overturning it.
Ms. Flax's Fifth Assignment of Error is overruled.
 VI
Ms. Flax's Sixth Assignment of Error is as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO DEDUCT ALL TAX LIABILITIES AND EXPENSES ASSOCIATED WITH THE HAPHAZARD SALE OF STOCK PERFORMED BY THE APPELLEE, FROM THE APPELLEE'S SHARE OF THE PROCEEDS.
Ms. Flax contends that the trial court erred by requiring the parties to jointly pay the tax liability on the proceeds from the sale of Mr. Flax's interest in Marion Niedhamer Produce, Inc. Instead, she suggests that the taxes on the proceeds should have been paid entirely from Mr. Flax's share of the proceeds.
Ms. Flax has not properly preserved this error pursuant to Civ. R. 53(E)(3)(b), which provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Our review of the record establishes that Ms. Flax did not file an objection to the magistrate's ruling on this issue, and thus, we will not consider it on appeal.
This assignment of error is overruled.
 VII
Ms. Flax's Seventh Assignment of Error is as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ENFORCE THE TEMPORARY SUPPORT ORDER AS ADJUSTED ON JANUARY 26, 1996, AND PRESENTED TO APPELLEE THROUGH EXHIBITS FILED AT THE NUMEROUS TRIAL DATES, FOR THE MONTHS INCLUDING APRIL, MAY, JUNE, AND THE FIRST TEN DAYS OF JULY OF 1996.
Ms. Flax contends that the court erred because it did not enforce the January 26, 1996 temporary support order for the months of April through July 10, 1996.
On March 28, 1996, Ms. Flax filed a motion to hold Mr. Flax in contempt for failing to pay his portion of the children's expenses as required by the temporary support order of January 26, 1996. The matter was heard at the time of the divorce hearing. After the hearing, the court found that Mr. Flax had failed to pay the expenses for January and March 1996, and found Mr. Flax in contempt for failing to make those payments. The trial court further found as follows:
 The evidence in the record establishes that no identification of the expenses for the children after March of 1996 were made or presented to [Mr. Flax] with a demand for payment. Accordingly, the Magistrate issues no award for reimbursement for expenses for periods after March of 1996.
We have reviewed the record and the exhibits relating to this issue, and find that Ms. Flax testified that she sent Mr. Flax a list of the children's expenses for the month of April, but that she did not do so for May, June or July of 1996. She also submitted exhibits of expenses for those months. Our review of those exhibits indicates that she did incur expenses for the care of the children during May and June; however, the exhibit for July 1 through July 10 does not list any children's expenses. Furthermore, the record does not indicate that Ms. Flax filed any motion to hold Mr. Flax in contempt for failing to pay his portion of the expenses for April through July 10, 1996.
While the January 26, 1996 order did not specifically require Ms. Flax to identify, and to make a demand for reimbursement of, necessary child expenses, we conclude that she was logically required to do so in order to give Mr. Flax notice that expenses were due and payable. Her failure to do so would relieve Mr. Flax of any liability for contempt had she filed a motion to hold him in contempt for that period of time. However, contrary to the magistrate's ruling, we conclude that it did not relieve Mr. Flax of his duty to pay after the expenses were subsequently identified and presented at trial. Accordingly, we conclude that the trial court did err by failing to require Mr. Flax to reimburse Ms. Flax for any necessary child expenses incurred from April through June, 1996.
This assignment of error is sustained, and the matter is remanded to the trial court to make a determination of the necessary child expenses incurred for the months of April, May and June of 1996, and to enter an order requiring Mr. Flax to reimburse Ms. Flax for one-half of that amount.
 VIII
Ms. Flax's Eighth Assignment of Error is as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ADDRESS THE TEMPORARY SUPPORT ORDER REQUIREMENTS FOR THE INTERIM MONTHS BETWEEN THE AUGUST 12, 1996 DECISION AND THE FEBRUARY 11, 1997 JUDGMENT ENTRY.
Ms. Flax contends that the trial court should have addressed the temporary support arrearage issue in its judgment entry of February 11, 1997.
As previously noted, Ms. Flax has filed two appeals with this court. In our disposition of her other appeal, we have agreed that the trial court correctly declined to enforce the temporary support order after the final decree had been entered because the temporary order had been superseded by the final judgment. SeeFlax v. Flax (Feb. 13, 1998), Greene App. No. CA 97-0063, unreported, citing Colom v. Colom (1979), 58 Ohio St.2d 245. This ruling was based upon our finding that the temporary support orders had merged with the final decree, and were no longer separately enforceable. Thus, we affirmed the trial court's decision of May 29, 1997. However, our prior holding does not prevent Ms. Flax from raising the issue in her direct appeal from the final decree of divorce. In fact, we agree with Ms. Flax that the trial court erred by failing to address the issue of the temporary support arrearage in the February 11, 1997 decree. The matter was clearly pending before the trial court; both the magistrate's decision finding that an arrearage existed and Mr. Flax's objections thereto had been filed almost a month prior to the entry of the final decree. Thus, we find that the trial court abused its discretion by failing to address all issues in the final decree. Accordingly, we sustain this assignment of error and remand the matter to the trial court to hold a hearing on the matter of the arrearage set forth in the magistrate's January 13, 1997 decision, and to incorporate its findings regarding that issue in an amended decree of divorce.
 IX
Ms. Flax assigns the following as her Ninth Assignment of Error:
 THE TRIAL COURT ABUSED ITS DISCRETION BY NOT AWARDING APPROPRIATE ATTORNEY'S FEES TO APPELLANT FOR EXPENSES INCURRED FOR THE COMPLEXITY AND LACK OF COOPERATION BY THE PARTIES.
Ms. Flax contends that the trial court erred by failing to award her all attorney fees incurred during the course of the divorce proceedings.
Evidence was introduced that Ms. Flax had incurred attorney fees in excess of $13,000. Ms. Flax argues that she is entitled to an award of those fees because of the "extensive work involved with dealing with the two defendants in this case" which often required "double responses" to be prepared and sent. She claims that this caused an "additional disparity of cost to [her]."
The assessment of attorney fees against a party in a divorce proceeding is provided for in R.C. 3105.18(H), as follows:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating his rights and adequately protecting his interests if it does not award reasonable attorney's fees.
The award of attorney fees is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. Walker v. Walker (1996), 112 Ohio App.3d 90, 93. "Abuse of discretion" implies that the court's judgment is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
The court justified its award of $750 in fees as follows:
 [Ms. Flax] has sought an award of attorney's fees for the entire litigation, including the attorney's fees associated with the compelling of discovery of financial information of Marion Niedhamer Produce, Inc. during the progress of this litigation. Specifically, [Ms. Flax] filed Motions on June 27, 1995, August 21, 1995, and January 24, 1996, requesting documentation associated with information necessary for the preparation of [her] case. * * * In the opinion of the Magistrate, additional effort was required by [Ms. Flax's] counsel to adequately prepare her case, and while the Magistrate does not believe that there was willful contempt on the part of [Mr. Flax], nonetheless expenses were incurred in order to allow [Ms. Flax] to fully litigate and protect her rights and interest in this case. * * * A review of [Ms. Flax's] Exhibit 61 leads the Magistrate to the conclusion that $750.00 of attorney's fees is an appropriate award to [Ms. Flax] for the extra effort involved in discovery matters. * * *
 * * * The evidence in the record establishes that both parties had substantial attorney's fees associated with the presentation of evidence in this case. However, the Court has made a relatively equal division of the assets, and both parties, due to the availability of the proceeds of the sale of [Mr. Flax's] interest in Marion Niedhamer Produce, Inc., had an equal ability to pay attorney's fees when due and as incurred. In the opinion of the Magistrate, further award of attorney's fees * * * is not warranted under the facts and circumstances of this case.
After reviewing the record and transcripts, we cannot find any evidence that the mere fact that there were multiple defendants in the case resulted in disproportionate costs. We conclude that the trial court's decision is supported by the record, and does not constitute an abuse of discretion.
This Assignment of Error is overruled.
 X
Ms. Flax's Tenth Assignment of Error is as follow:
 THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE SALE OF THE MARION NIEDHAMER PRODUCE CORP. STOCK TO PROCEED, AS WELL AS THE SALE OF THE FS REALTY INTEREST TO PROCEED BY RELEASING THE RESTRAINING ORDER TO THE DETRIMENT OF THE APPELLANT.
Ms. Flax claims that the trial court erred by vacating the order that restrained Mr. Flax from selling any marital assets, and by permitting him to sell his interests in the produce company and the realty company.
As previously stated, there is no evidence in the record to suggest that the sale of Mr. Flax's interest was anything less than a good faith, arm's length transaction. Thus, we conclude that the trial court did not abuse its discretion by allowing the sale.
Furthermore, the Magistrate's Report and Recommendation vacating the restraining order was entered on July 18, 1995. Ms. Flax failed to file any objection to the decision, thereby waiving the issue on appeal. Civ. R. 53(E)(3)(b).
Ms. Flax's Tenth Assignment of Error is overruled.
 XI
Ms. Flax's Seventh and Eighth Assignments of Error having been sustained, the judgment of the trial court is Affirmed in part and Reversed in part, and this cause is Remanded for further proceedings consistent with this opinion.
YOUNG, P.J., and WOLFF, J., concur.
Copies mailed to:
James R. Kirkland
Robert D. Goelz
Hon. Judson Shattuck
[1] The magistrate's decision and order states that Mr. Flax's accountant placed a value on the corporation that ranged from $231,600 to $400,000. However, from reviewing the accountant's testimony, we note that he actually testified that the corporation had a value ranging from $231,000 to $510,000. Therefore, Mr. Flax's one-half interest in the corporation would be in the range of $115,500 to $255,000.
[2] Ms. Flax also claims that because the trial court chose to accept the value placed on the building by Mr. Flax's appraiser, no benefit was gained from the sale of Mr. Flax's interest. However, the record reveals that the purchaser of the interest assumed the payment of Mr. Flax's share of the $367,000 debt owed on the building. Therefore, we cannot agree that the sale did not benefit the parties, since it accomplished the discharge of a substantial debt that could have been considered a marital debt.